**Wilburn GONCE and Larry Riley, Petitioners,**

v.

**VETERANS ADMINISTRATION, Respondent.**

Nos. 88–3328, 88–3329.

United States Court of Appeals, Federal Circuit.

April 13, 1989.

Lanelle L. McNamara, McNamara & McNamara, Waco, Tex., argued, for petitioners.

Larry R. Steffes, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With him on the brief, were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Asst. Director. Also on the brief, was D. Keith Rollins, Asst. Dist. Counsel, Veterans Admin., of counsel.

Before MAYER and MICHEL, Circuit Judges, and NICHOLS, Senior Circuit Judge.

## OPINION

MAYER, Circuit Judge.

This is a consolidated appeal from arbitration proceedings dismissing the grievances of Wilburn Gonce and Larry Riley as not arbitrable. *Wilburn Gonce*, No. 88–06829 (May 25, 1988) (Goodman, Arb.); *Larry Riley*, No. 88–06824 (May 31, 1988) (Hamilton, Arb.). We affirm.

### Background

Gonce and Riley were employed as members of the nursing staff of a locked psychiatric ward at the Veterans Administration Medical Center, Waco, Texas. Between April and August 1986, the Veterans Administration (VA) issued letters of proposed removal to nineteen employees on charges that arose from alleged patient abuse captured on videotapes. Eleven employees were subsequently dismissed, including Gonce and Riley.

Gonce and Riley were members of Local Union No. 1822 of the American Federation of Government Employees (union). As was their right under the collective bargaining agreement established by the union and the VA, they challenged their discharges through the grievance procedure. As the final step in the grievance procedure, the union invoked arbitration on behalf of Gonce and Riley, among several other employees.

This litigation has a history of skirmishes between the union and the VA in several forums. In addition to the grievances, the union also assisted affected employees in proceedings before the Texas Employment Commission seeking unemployment compensation. During these hearings, a dispute broke out over the quality of the time-lapsed videotapes the VA was using to justify the adverse actions. As a result, the union filed an unfair labor practice complaint with the Federal Labor Relations Authority, which was dismissed as untimely. Finally, during the summer of 1987, the VA and the union engaged in consolidated settlement negotiations. When settlement could not be reached, the union began to request panels of arbitrators to hear the affected employees' cases.

The issue in this appeal is not whether these employees engaged in patient abuse or any other merit-based issue. It is whether the union violated the collective bargaining agreement by unreasonably delaying a request for a panel of arbitrators after invoking arbitration on behalf of Gonce and Riley, thereby rendering the grievances non-arbitrable. The collective bargaining agreement requires that "[o]n or after the date of the notice to invoke arbitration, the moving party ... request the Federal Mediation and Conciliation Service to provide a list of seven (7) impartial persons to act as an arbitrator." Master Agreement between the Veterans Administration and the American Federation of Government Employees, Art. 14 § 2 (Aug. 1982) (agreement). The agreement also states that the purpose of the grievance procedure is to provide for the "prompt and equitable resolution of grievances." *Id.* at Art. 13 § 1. Gonce was removed by the VA on June 12, 1986, and Riley on June 17, 1986. The union invoked arbitration on behalf of Riley and Gonce on July 9 and 25, 1986, respectively, but did not request a panel of arbitrators in either case until December 21, 1987, seventeen months later.

The union pursued one of the other affected employee's grievances with more vigor. In the case of Jeanie Anderson, the delay in requesting arbitration was nine months. That arbitrator held that the grievance was arbitrable and found for Anderson on the merits. *Jeanie Anderson*, No. 87–18684 (Oct. 31, 1987) (Schedler, Jr., Arb.). Before the arbitrator

in *Gonce* decided the case, an arbitrator also decided the case of another of Gonce's co-workers, ruling that the grievance was arbitrable despite a seventeen-month delay, and finding for him on the merits. *Melvin Gayle*, No. 88–06827 (May 2, 1988) (Woodward, Arb.).* Gonce and Riley argued that these decisions collaterally estop the VA from maintaining that their grievances are non-arbitrable, and that, in any event, the delay was justified.

In contrast to the other decisions, the arbitrators in both *Gonce* and *Riley* addressed the issue of arbitrability separately from the merits. In reviewing the prior awards, the *Riley* arbitrator observed that they had not addressed delay in terms of whether it violated the collective bargaining agreement, and that prior arbitrators allowed their view of the merits to cloud their judgment on the arbitrability issue. The *Gonce* arbitrator found that the case before him was factually different from the prior cases. But both arbitrators ruled that they were not bound by prior awards and that the delay was a violation of the collective bargaining agreement. Therefore the grievances were not arbitrable. This appeal followed.

*Discussion*

■ Gonce and Riley pursued their complaints under negotiated grievance procedures controlled by 5 U.S.C. § 7121 (1982) under which they are entitled to review of their awards here. The standard of review of arbitral decisions is the same as for review of final decisions of the Merit Systems Protection Board. 5 U.S.C. § 7121(f) (1982); *Grigsby v. United States Dep't of Commerce*, 729 F.2d 772, 774 (Fed.Cir. 1984). Therefore, the decisions of the arbitrators to deny collateral estoppel effect to the prior awards and to hold the grievances non-arbitrable because of excessive delay in requesting a panel must be affirmed unless they are arbitrary, capricious, an abuse of discretion, contrary to law or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1982); *Hayes v. Department*

*of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir. 1984).

■ From what the Supreme Court has said, it appears that the preclusive effect of prior arbitration awards is for individual resolution, absent a provision in the governing contract that requires earlier awards to bind subsequent arbitrators. *See W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983); *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 222, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985); *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). There is no requirement in our collective bargaining agreement that arbitrators be bound in any way by earlier awards.

We held in *Kroeger v. United States Postal Service*, 865 F.2d 235 (Fed.Cir.1988), that it is permissible to apply collateral estoppel to labor arbitration decisions in specified circumstances. In that case, a Postal Service employee was discharged for mishandling postal funds. The employee appealed the dismissal to an arbitrator, who found just cause for Kroeger's removal. Kroeger appealed the dismissal to the Merit Systems Protection Board which affirmed the removal, finding the charge of mishandling funds was fully litigated in the prior arbitration proceeding and subject to collateral estoppel.

We affirmed the Board's decision, stating that "[t]here are and will be cases in which application of collateral estoppel is justified," such as when

(i) the issue previously adjudicated is identical with that now presented, (ii) that issue was "actually litigated" in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action.

---

* The *Riley* arbitrator also had before him the award of *Earnest Cashaw*, No. 88–06610 (May 16, 1988) (Harr, Arb.), in which the grievance

was found arbitrable despite an eighteen-month delay. The discussion relating to *Gayle* is equally pertinent to *Cashaw* in the *Riley* case.

865 F.2d at 239 (quoting *Thomas v. General Serv. Admin.*, 794 F.2d 661, 664 (Fed. Cir.1986)).

■ The first requirement of the *Kroeger* test, that the issue previously adjudicated be identical to the one now presented, *Kroeger*, 865 F.2d at 239; *see also Thomas*, 794 F.2d at 664; *Mother's Restaurant v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983), is problematical here because it is unclear what the facts are. Though related, the actions taken against the VA employees were based on separate instances of alleged misconduct. The union presented both arbitrators with a prior award allowing arbitration despite a seventeen-month delay (*Gayle*), but there are no transcripts of the arbitration proceedings. Therefore, we cannot tell whether mitigating circumstances distinguish the cases. It was up to Gonce and Riley to provide us with pertinent parts of the administrative record and citations to it in support of their appeals which they did not do. *Chaney & James Constr. Co. v. United States*, 190 Ct.Cl. 699, 421 F.2d 728, 740 (1970); *see also Milmark Serv. v. United States*, 731 F.2d 855, 858 (Fed.Cir.1984). So we cannot look beyond what the arbitrators said in announcing the awards themselves.

Notwithstanding, we think this case presents a situation different from *Kroeger*. There was no dispute in *Kroeger* that the charge of mishandling funds was the same before both the arbitrator and the Board. We simply upheld the Board's decision to give preclusive effect to the findings of the arbitrator who had already heard and decided precisely the same issue contested by the same parties. Here, the arbitrators agreed with the VA that the questions of arbitrability presented in the *Gonce* and *Riley* cases were different from those addressed in the other awards cited. Gonce and Riley want us to overturn the arbitrators' independent interpretations of the collective bargaining agreement, and force them to give preclusive effect to prior awards, even though the facts may have been different and the collective bargaining agreement allows either party to request that grievances be handled individually.

The Supreme Court says courts must enforce the decisions of private arbitrators in interpreting a collective bargaining agreement, and should not review the merits of the awards except to ensure that they are not inconsonant with public law and policy. *W. R. Grace & Co.*, 461 U.S. at 764, 103 S.Ct. at 2182. The district court in *Grace* refused to enforce an award in which the arbitrator concluded that a prior arbitrator in deciding the same contractual issue had acted beyond his jurisdiction and that the current arbitrator was not bound by that award. In sustaining the second award, the Court said,

> Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," ... a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis of the arbitrator's decision may be ambiguous. [*Id.*]

Concededly *Grace* addresses judicial enforcement of private arbitration and Gonce and Riley have a statutory right of judicial review, but it is pertinent to the proposition that courts should respect arbitral awards based on the agreements both parties bargained for. 461 U.S. at 765, 103 S.Ct. at 2183; *see also United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). The VA exercised the right to request that each grievance be handled individually, and therefore lack of uniformity among awards is not unexpected or objectionable. Like the second arbitrator in *Grace*, the arbitrators here came to a conclusion about the meaning of the collective bargaining agreement different from those who decided the issue earlier. But that in and of itself is not any reason for us to question it.

Courts should be careful not to "judicialize" the arbitration process. Arbitration normally envisions that each case be decided on its own under the controlling contract without undue reliance on other arbitration awards, even if the facts and circumstances are close. Arbitrators are expected to bring their best independent judgment to

bear, not to ritualistically follow what others have done, especially, as here, when they suspect an error was earlier committed. It is one thing to bind the parties by estoppel when the same facts have already been resolved by an earlier forum of competent authority as in *Kroeger;* it is quite another to bind them when there is not precise correspondence of facts, circumstances, and timing, as here. Indeed, if the propounded concept were accepted, the earlier arbitrator who said eighteen months of delay is just fine would have defined the meaning of this collective bargaining agreement for the remainder of its term. That would be incongruous in light of strict time limits on earlier steps of the grievance procedure no longer than forty-five days. Agreement, Art. 13, § 11(B).

▮ Alternatively, Gonce and Riley argue that the arbitral awards are not supported by substantial evidence. In the absence of a specific contractual or statutory requirement, an arbitrator is under no duty to set out specific findings of fact to support an award. *See Atkinson v. Sinclair Ref. Co.,* 370 U.S. 238, 244 n. 4, 82 S.Ct. 1318, 1322 n. 4, 8 L.Ed.2d 462 (1962); *Enterprise Wheel,* 363 U.S. at 598, 80 S.Ct. at 1362; *see also Wissman v. Social Sec. Admin.,* 848 F.2d 176 (Fed.Cir.1988). There was no such requirement in this agreement. Both arbitrators' decisions rejecting the prior arbitration awards' finding of arbitrability, however, were thorough and well-reasoned.

In *Gonce,* the arbitrator analyzed each of the union's claims of mitigating circumstances and rejected them. He found that the videotapes provided to the union were of sufficient quality to prepare a response to the firings. He found that the Texas Employment Commission hearings did not excuse the delay in pursuing the grievance. Indeed, Gonce did not even have a Commission hearing. And the arbitrator found that no settlement offer was made for a year between July 1986 to June 1987; in any event, settlement discussions do not justify failure to pursue a grievance with diligence. The *Riley* arbitrator noted that the union offered a number of excuses for the delay in requesting a panel. But he emphasized that at no time did the union "seek an agreement with the [VA] to toll the time for requesting a panel or suggest any orderly agreement to process the various claims."

The arbitrator in *Gonce* distinguished the *Anderson* award, where the delay was only nine months, but was silent about the *Gayle* award, also before him, where the delay was nearly the same as here, seventeen months. In light of the absence of a record, discussed above, we must assume the arbitrator properly considered *Gayle;* he was obliged to do no more. The *Riley* arbitrator rejected *Gayle* because it did not address the question of whether the union breached the collective bargaining agreement.

The federal policy favoring arbitration of labor disputes is well established. *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, ——, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). One reason for this is that arbitration is "generally 'faster, cheaper, [and] less formal' than litigation." *Wissman,* 848 F.2d at 177. That surely was not the case here. Gonce and Riley could have appealed their dismissals to the Board in lieu of the grievance procedure and likely have had a more expeditious review than this. *See* 5 U.S.C. §§ 7121(e)(1), 7701(i)(1) (1982); 5 C.F.R. § 1201.22(a) (1988). The lapse of some seventeen months here is a lumbering pace, and runs counter to the expectation that arbitration will be "faster, cheaper, and less formal" than administrative or judicial litigation.

▮ The union's resort to the other forums does not excuse its lack of diligence in these grievances. Simply put, it was the union's responsibility to request the panel of arbitrators "on or after the date of the notice of arbitration" so as to secure "prompt and equitable resolution of grievances," but it waited seventeen months before it did. From all that appears nothing impeded the request. We agree with the arbitrators that there comes a time when the employer has a right to know whether a union or employee intends seriously to

prosecute a formal grievance, and there is no basis to overturn the conclusion that a seventeen-month delay is a violation of the collective bargaining agreement.

### Conclusion

Accordingly, the awards of the arbitrators are affirmed.

AFFIRMED.

NICHOLS, Senior Circuit Judge, dissenting.

Respectfully, I dissent. I agree with the court about collateral estoppel, *i.e.*, if the parties had wanted decisions respecting different employees to be consistent, they could have taken steps to cause that to occur. It may be that antecedently they preferred to allow a possibility of inconsistency. They must have known the standard procedure produced a different arbitrator for each discharged employee, despite the close interrelationship of all the cases of the 19 removed employees—a strange way to run a railroad—but so it is.

I think the arbitrators in the Gonce and Riley cases made an over-imaginative use of the collective bargaining agreement. It does not expressly say, nor do I think it reasonably implies, that the union must request the panel of arbitrators without awaiting the outcome of settlement negotiations, or pursuit of other remedies, and within some fixed time. The likely result of a request would have been that the persons to arbitrate Gonce and Riley would have known of their selection, and they might have set their time clock running and gone to work on the cases, though settlement still seemed likely. The union made an uncontradicted showing that it would be unfeasible to try 19 cases or any substantial portion thereof simultaneously.

The union simply led Gonce and Riley into a trap for the unwary, set for them by parties more skilled than the union was in the intricate choreography of collective bargaining. The case once again shows how foolish any lay person is in these United States and this year of grace, 1989, to engage in any transaction, important and novel to him or her, without having a skilled (and expensive) lawyer at his elbow. As to the remedies Gonce and Riley may have against the union for loss caused by its obvious carelessness, *cf. Karahalios v. NFFE*, —— U.S. ——, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989).