NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000725**
**16-SEP-2024**
**09:13 AM**
**Dkt. 552 MO**

NO. CAAP-19-0000725

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MATTHEW LOPRESTI, JULIA LOPRESTI, ROBERT JOHNSON, REGENA
JOHNSON, KYLE MCKEE, MARITES MCKEE, EMIL GOCONG, LIZ GOCONG,
KENNETH TYLER, on Behalf of Themselves and All Others Similarly
Situated, Plaintiffs-Appellees/Cross-Appellants,
v.
HASEKO (HAWAII), INC.; HASEKO (EWA), INC.; HASEKO DEVELOPMENT,
INC.; HASEKO HOMES, INC.; HASEKO INVESTMENTS, INC.; HASEKO
REALTY (HAWAII), INC.; HOAKALEI; HOAKALEI CORPORATION; HOAKALEI
DEVELOPMENT, LLC; HOAKALEI RESIDENTIAL, LLC,
Defendants-Appellants/Cross-Appellees,
and
DOE DEFENDANTS 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC131001995)

**MEMORANDUM OPINION**
(By: Wadsworth, Presiding Judge, McCullen and Guidry, JJ.)

Defendants-Appellants/Cross-Appellees Haseko (Hawaii),

Inc., Haseko (Ewa), Inc., Haseko Development, Inc., Haseko

Homes, Inc., Haseko Investments, Inc., Haseko Realty (Hawaii), Inc., Hoakalei Corporation, Hoakalei Development, LLC, and Hoakalei Residential, LLC[1] appeal from the Final Judgment (**Judgment**), entered on September 27, 2019, by the Circuit Court of the First Circuit (**circuit court**).  Haseko also challenges the circuit court's January 29, 2018 Findings of Fact (**FOF**), Conclusions of Law (**COL**), and Order Regarding Counts 1 and 9 (**Equitable Trial Court Order**).[2]

Plaintiffs-Appellees/Cross-Appellants Matthew Lopresti, Julia Lopresti, Robert Johnson, Regena Johnson, Kyle McKee, Marites McKee, Emil Gocong, Liz Gocong, and Kenneth Tyler (collectively **Plaintiffs**) cross-appeal from the Judgment. Plaintiffs also challenge the circuit court's:

> (1)  October 18, 2016 Order Regarding Plaintiffs'
>       Motion for (1) Entry of the Order Granting
>       Defendants Haseko (Hawaii), Inc., Haseko (Ewa),

---

[1]      We refer to these nine Haseko entities collectively as **Haseko**. Of these nine entities, as further explained below, the following four were found by the jury to have engaged in unfair or deceptive acts or practices (**UDAP**) under Hawaii Revised Statutes (**HRS**) § 480-2:  Haseko (Hawaii), Inc., Haseko (Ewa), Inc., Haseko Development, Inc., and Haseko Realty (Hawaii), Inc.  We refer to these four entities collectively as the **Haseko Defendants** or **Defendants**.

[2]      The Honorable Karen T. Nakasone (the **Equitable Trial Court**) presided over Plaintiffs' equitable claims, and entered the Equitable Trial Court Order.  The Honorable Gary W.B. Chang (the **Legal Trial Court**) presided over Plaintiffs' legal claims and entered the Judgment, as well as the orders referred to below as the Legal Trial Court Order and the Order Denying New Legal Trial.

Inc., Haseko Development, Inc., Haseko Homes, Inc., Haseko Investments, Inc., Haseko Realty (Hawaii), Inc., Hoakalei Corporation, Hoakalei Development, LLC, and Hoakalei Residential, LLC's Renewed Motion for Judgment as a Matter of law, Filed October 8, 2015 and in the Alternative Clarification Regarding the Same; and (2) Entry on Class Plaintiffs' Motion for New Trial on Damages or, in the Alternative, to Reconsider Decision Granting Defendants' Motion for Judgment as a Matter of Law Filed October 9, 2015, Filed September 29, 2016 (**Legal Trial Court Order**);

(2)  February 2, 2017 Order Denying "Class Plaintiffs' Motion for New Trial on Damages, or in the Alternative, to Reconsider Decision Granting Defendants' Renewed Motion for Judgment as a Matter of Law Filed October 9, 2015" Filed on February 26, 2016 **(Order Denying New Legal Trial)**; and

(3)  the Equitable Trial Court Order.

Haseko raises nine points of error on appeal; Plaintiffs raise five points of error on cross-appeal.  Upon careful review of the record and relevant legal authorities, and

3

having given due consideration to the arguments advanced and the issues raised by the parties, we resolve these points of error as follows.

## I. Background

This appeal concerns a large multi-purpose real estate project in the ʻEwa District of Oʻahu (the **Project**), which had included, as part of its original master plan, the construction of a man-made marina (the **Marina**). Haseko was the Project's developer. After years of representing that the Marina would be constructed as the "focal point" and "main benefit" of the Project, Haseko, in July 2011, abandoned the Marina as too expensive to construct, and decided to construct a lagoon instead.

In July 2013, nearly 3,000 Project homeowners filed a class action complaint, seeking damages from Haseko for changing the master plan of the Project by substituting the Marina for a lagoon. Plaintiffs set forth nine claims in their operative First Amended Complaint. Two claims were dismissed before trial.[3] The remaining claims were addressed through bifurcated judicial proceedings.

---

[3] In August 2015, the Legal Trial Court also granted judgment as a matter of law "as to all class members that were not the original purchasers of homes in Ocean Pointe/Hoakalei[,]" thus limiting the class to the original purchasers of property within the Haseko development.

4

The Legal Trial Court presided over a nine-week jury trial on Plaintiffs' UDAP, Bad Faith, and Negligent Misrepresentation claims. In September 2015, the jury returned a special verdict in favor of Plaintiffs on the UDAP claim only, finding that the Haseko defendants had engaged in UDAP violations under HRS § 480-2. The jury awarded Plaintiffs $1,300 per home in special damages, and $20 million in punitive damages.

The Legal Trial Court set aside both the jury's punitive and special damages awards. With respect to special damages, the Legal Trial Court explained that, "the measure of damage was inappropriate and was not consistent with applicable legal principles that govern the determination of damages in an unfair and deceptive claim practice case."

The Legal Trial Court then recused itself from the Plaintiffs' remaining Condominium Property Act (**CPA**), Promissory Estoppel, Estoppel, and Unjust Enrichment claims. In November 2015, these claims were reassigned to the Equitable Trial Court, pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 63.

In September 2016, the Equitable Trial Court dismissed Plaintiffs' estoppel claims. The Equitable Trial Court ruled in favor of Plaintiffs on the CPA claim, by granting Plaintiffs the right to rescind their purchase agreement with Haseko. The

Equitable Trial Court also ruled in favor of Plaintiffs on the unjust enrichment claim, awarding a sum of $20 million to be divided among Plaintiffs who elected not to rescind.

The Legal Trial Court entered Judgment, and the parties timely appealed.

## II. Standards of Review

We review questions of law and conclusions of law *de novo* under the right/wrong standard. Hawaiʻi Gov't Emps. Ass'n, AFSCME Local 152, AFL-CIO v. Lingle, 124 Hawaiʻi 197, 202, 239 P.3d 1, 6 (2010). We review findings of fact for clear error. Dan v. State, 76 Hawaiʻi 423, 428, 879 P.2d 528, 533 (1994).

We review the application of equity for abuse of discretion. In re Est. of Campbell, 106 Hawaiʻi 453, 461, 106 P.3d 1096, 1104 (2005).

## III. Discussion

### A. Plaintiffs' Damages Remedy for the UDAP Violation

Following trial, the Legal Trial Court jury found that the Haseko Defendants violated the UDAP statute. Pursuant to HRS § 480-2, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." To prevail on a UDAP claim, a plaintiff consumer must prove "(1) either that the defendant violated the

6

UDAP statute (or that its actions are deemed to violate the UDAP statute by another statute), (2) that the consumer was injured as a result of the violation, and (3) the amount of damages sustained as a result of the UDAP violation." Lima v. Deutsche Bank Nat'l Tr. Co., 149 Hawai'i 457, 464-65, 494 P.3d 1190, 1197-98 (2021) (citations omitted).

In cases involving fraud or deceit, the measure of damages "is usually confined to either the out-of-pocket loss or the benefit of the bargain." Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai'i 309, 320, 47 P.3d 1222, 1233 (2002) (cleaned up). Under the out-of-pocket rule, "the damages are the difference between the actual value of the property received and the price paid for the property, along with any special damages naturally and proximately caused by the fraud prior to its discovery, including expenses incurred in mitigating the damages." Lima, 149 Hawai'i at 469, 494 P.3d at 1202 (cleaned up). In contrast, the benefit-of-the-bargain rule "allows the [recipient of the fraud or deceit] to recover the difference between the value of the property received and the value to plaintiff that the property would have had if the representation had been true." Santiago v. Tanaka, 137 Hawai'i 137, 159, 366 P.3d 612, 634 (2016) (quoting B.F. Goodrich Co. v. Mesabi Tire Co., 430 N.W.2d 180, 182 (Minn. 1988)).

7

Plaintiffs raise five points of error on cross-appeal, contending that the Legal Trial Court erred in: (1) instructing the jury on the proper measure of damages for a UDAP violation; (2) granting judgment in favor of the Haseko Defendants when instead it should have ordered a new trial on damages; (3) denying Plaintiffs relief based on HRS § 480-12, despite the jury's finding that the Haseko Defendants breached HRS Chapter 480; (4) refusing "Plaintiffs' Proposed Jury Instruction 21," and later finding that Plaintiffs introduced no evidence that they suffered monetary damages; and (5) allowing evidence of a subsequent increase in property values, including the testimony of Haseko's appraisal expert James Hallstrom (**Hallstrom**).

We address each of these points, some of which raise overlapping issues, below.

1. **Jury Instructions Regarding the Measure of Damages**

In their first and fourth points of error, Plaintiffs contend, respectively, that the Legal Trial Court improperly instructed the jury on the measure of special damages and erred in refusing "Plaintiffs' Proposed Jury Instruction 21."

At trial, the Legal Trial Court instructed the jury on the measure of damages for a UDAP violation as follows (the **UDAP damages instructions**):

> If you find that plaintiffs have prevailed against a
> defendant on the claim of unfair or deceptive acts or

practices, you must decide the amount that will reasonably and fairly compensate plaintiffs for the actual economic loss legally caused by the unfair or deceptive acts or practices.

In determining the amount of special damages, if any, to award plaintiffs, you may consider whether plaintiffs are entitled to the benefit of the bargain they believed they purchased, contracted for, or invested in. The benefit of the bargain is the difference, if any, between the value of the personal investment represented to plaintiffs, and the value of such personal investment received by plaintiffs. You may award plaintiffs special damages only if the value of what was received is less than the value of what was represented.

In awarding damages, if any, for unfair or deceptive acts or practices, you must not include any amount:

1. For non-economic losses, such as emotional distress; or

2. To punish or make an example of a defendant by awarding punitive damages; or

3. For legal fees or costs of this lawsuit.

The Legal Trial Court further instructed the jury: "Damages are established at the time of the sale, and those damages are not later reduced by a subsequent beneficial event."[4]

The jury returned a special verdict in which it found that the four Haseko Defendants violated the UDAP statute. The jury awarded Plaintiffs $1,300 per home in special damages, and $20 million in punitive damages.[5]

---

[4]    Notably, in their closing, Plaintiffs argued to the jury that Hallstrom's testimony was "100 percent worthless[,]" because "you have a jury instruction that says you measure the damages at the time of sale."

[5]    Plaintiffs confirm in their Cross-Appeal Opening Brief that they do not challenge the Legal Trial Court's decision to set aside the jury's punitive damages award.

Plaintiffs argue that the UDAP damages instructions "failed to properly instruct the [j]ury on how to properly determine and calculate damages via the [t]hree [s]tep process mandated by Davis [v. Wholesale Motors, Inc., 86 Hawaiʻi 405, 949 P.2d 1026, (App. 1997)]."  In Davis, a plaintiff consumer sued a car dealer for damages caused by the dealer's unfair and deceptive trade practice in selling a car to him.  This court decided that under HRS § 480-13, "the plaintiff should be placed in the position he or she would have held had he or she not been defrauded[,]" but should not be permitted to reap a benefit received from the defendant dealer under the parties' contract. Id. at 421, 949 P.2d at 1042.  We thus upheld an award of damages to the defendant dealer on its counterclaim – which we referred to as a "setoff award" – for the rental value of the car and repair costs for damage done to the car while the plaintiff possessed it.  Id.  We further held that any damages sustained by the plaintiff should be trebled under HRS § 480-13(b)(1) before the award to the defendant was applied.  Id.

Based on Davis, Plaintiffs contend that "the legally correct standard for measure of damages in this case should have been to take the value reflected in each sales contract, treble that number as required by the statute, and then any offset applied against the trebled number."  Plaintiffs argue that

10

"[t]he value of the residence received . . . may serve as an offset to the [damages] to be trebled first per <u>Davis</u> . . . ." Plaintiffs appear to challenge the UDAP damages instructions for failing to reflect their interpretation of this "three-step process."

Initially, we note that the court's UDAP damages instructions essentially track Hawaiʻi Civil Jury Instructions (**HCJI**) 19.6, 19.7, and 19.8, though the order of Instruction Nos. 19.7 and 19.8 is reversed. In particular, HCJI Instruction No. 19.8[6] sets out the benefit-of-the-bargain rule for measuring UDAP damages, consistent with the rulings in <u>Ellis</u>, <u>Zanakis-Pico</u>, and <u>Santiago</u>, *supra*. This is the measure of damages that Plaintiffs appeared to advocate in trial memoranda submitted to the Legal Trial Court. Indeed, on September 1, 2015, Plaintiffs filed their own proposed jury instructions based on HCJI Instructions 19.6, 19.7, <u>and 19.8</u>, in the <u>same order</u> as the

---

[6]     HCJI Instruction No. 19.8 states:

DAMAGES – BENEFIT OF THE BARGAIN

In determining the amount, if any, to award plaintiff(s), you may consider whether plaintiff(s) is/are entitled to the benefit of the bargain he/she/they believed he/she/they purchased, contracted for, or invested in. The benefit of the bargain is the difference, if any, between the value of the goods, services, or investment represented to plaintiff(s), and the value of such goods, services, or investment delivered to plaintiff(s).

(Footnote omitted.)

11

court later adopted. Although the court modified certain phrases in HCJI Instruction No. 19.8 to fit the facts of the case, and added an explanatory sentence, Plaintiffs do not challenge any of these minor modifications.[7] Rather, they fault the court for not giving a Davis-based instruction that they themselves did not propose, and which they do not specify on appeal.

At bottom, Plaintiffs fundamentally misread Hawaiʻi law, including Davis, on the measure of UDAP damages in cases involving fraud or deceit. Plaintiffs were required to prove that they sustained damages as a result of Haseko's fraud-based UDAP violation. To the extent they relied on the benefit-of-the-bargain measure, they were required to establish the difference, if any, between the value of the personal investment represented to plaintiffs, i.e., the value of their homes as represented with the promised marina, and the value of what they received, which was essentially the promise of a home without a marina, measured at the time of the purchase/sale. See Ellis,

---

[7]     As to HCJI Instruction No. 19.8, the court replaced the phrase "goods, services, or investment" with the phrase "personal investment[,]" and replaced the phrase "delivered to plaintiff(s)" with "received by plaintiffs[,]" consistent with the facts of the case. The court also added the explanatory sentence, "You may award plaintiffs special damages only if the value of what was received is less than the value of what was represented[,]" which follows as a matter of logic from the benefit-of-the-bargain measure set out in the preceding sentence.

51 Haw. at 53, 451 P.2d at 820 (measuring fraud damages at the time of the transaction). Plaintiffs established the value of their homes as represented based on the purchase prices they paid. See *infra*. We address the evidence presented on the value of what Plaintiffs received in section 2, below. For purposes of the UDAP damages instructions, however, the value of what Plaintiffs received, measured at the time of purchase, is not a set-off to their benefit-of-the-bargain damages; it is the subtrahend in the calculation of their damages. Trebling the prices paid for the homes without subtracting the value received by Plaintiffs would result in an unjust windfall to Plaintiffs that finds no support in Davis.

Plaintiffs also argue that the Legal Trial Court erred in refusing "Plaintiffs' Proposed Jury Instruction 21." They do not quote the proposed instruction or identify where it is in the voluminous record. See Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4). Plaintiffs drop a brief footnote to their point of error suggesting that the proposed instruction was based on the Restatement (Second) of Torts § 549 (Am. L. Inst. 1965), but do not otherwise present any argument as to how the court erred in declining to adopt the proposed instruction. Their point is thus deemed waived. See HRAP Rule 28(b)(7). In any event, the UDAP damages instructions given by the court

13

adequately covered the principles derived from the applicable statute and case law.[8]  On this record, we cannot conclude that "when read and considered as a whole, the [UDAP damages] instructions given [were] prejudicially insufficient, erroneous, inconsistent, or misleading."  Moyle v. Y & Y Hyup Shin, Corp., 118 Hawaiʻi 385, 391, 191 P.3d 1062, 1068 (2008) (cleaned up).

### 2.  Evidence Supporting Plaintiffs' Damages

In their second point of error, Plaintiffs contend that the Legal Trial Court erred in granting judgment in favor of the Haseko Defendants rather than ordering a new trial on damages.  Relatedly, in their fourth point of error, Plaintiffs contend in part that the Legal Trial Court erred in finding that Plaintiffs introduced no evidence of their damages.

On October 28, 2015, the Legal Trial Court set aside the jury's damages award, stating with regard to special damages that "the court does not know what the jury intended to do by

_____

[8]  Plaintiffs' footnote suggests that the proposed instruction included an out-of-pocket measure of damages.  They do not explain, however, why they could not have argued for an award of such damages based on the court's jury instruction to "decide the amount that will reasonably and fairly compensate plaintiffs for the actual economic loss legally caused by the unfair or deceptive acts or practices."  Moreover, Plaintiffs do not explain how damages based on an out-of-pocket measure would have differed from those based on a benefit-of-the-bargain measure under the facts of this case.  Here, by definition, the price paid for the homes (for purposes of the out-of-pocket measure) was the value of the homes as represented (for purposes of the benefit-of-the-bargain measure), and the value of what was received was the same (for purposes of both measures).

14

way of their award, but in looking at how the evidence was structured, the only evidence the court really focussed [sic] on in terms of proof of compensatory damages was this contention that the damages should be measured by the cost of constructing the marina."[9]  Ultimately, the Legal Trial Court determined that there was insufficient evidence of Plaintiffs' damages to support the jury's verdict.  The Legal Trial Court granted the Haseko Defendants' motion to set aside the verdict, and entered judgment on the UDAP claim in favor of the Haseko Defendants.

We conclude that the Legal Trial Court erred in setting aside the jury verdict and entering judgment in favor of the Haseko Defendants on Plaintiffs' UDAP claim, which was contrary to the jury's ultimate determination that the Haseko

---

[9]     The court elaborated:

> . . . So the court does not conclude that a cost analysis would be an appropriate measure of damage.
>
> The alternative theory, which was actually the primary theory of the plaintiff, is that the plaintiff's benefit of the bargain damages takes the form of the cost to construct the marina in the case at bar. . . .
>
> . . . And when the case law talks about benefit of the bargain, the law contemplates that the wrongful conduct in question affected the value of the property, and if plaintiffs suffered a harm, that the value of the property would decrease after the wrongful conduct.  Therefore, the measure of damage is expressed in terms of the difference between the value of the property as represented with a marina, minus the value of the property that was actually received with lagoon.  So it requires evidence of the value of these properties, the plaintiffs' properties with a marina minus the value with a lagoon.  And there was simply no such evidence in the record.

Defendants violated the UDAP statute.  Plaintiffs presented sufficient evidence for the jury to award them UDAP damages based on a benefit-of-the-bargain measure.  First, Plaintiffs presented evidence of the value of their homes as represented with the proposed marina based on the purchase prices they paid, as reflected in their sales contracts.  Second, Plaintiffs presented evidence of the value of what they received at or near the time of purchase.  Specifically, Plaintiffs showed at trial that Haseko spent approximately $60 million on Marina construction from 2008 to 2010.[10]  Lawrence Chang, Haseko's controller, confirmed that this $60-million expenditure "came from homeowners for the marina and the cost was allocated into . . . each home[.]"  Plaintiffs thus presented evidence sufficient to show that revenue from each home sale – approximately $20,000 per home ($60 million/3,000 Plaintiffs) – was allocated to cover the costs of building the Marina.  This evidence supported Plaintiffs' argument that they overpaid for

---

[10]    Relatedly, the Equitable Trial Court's later FOFs and COLs were based in part on the court's review of "the trial record of the 2015 jury trial[.]"  The Haseko Defendants do not dispute the court's finding in FOF 22 that:  "From 2008 to 2010, Haseko spent approximately $60 million on Marina construction, dredging and lining the basin with armor stone.  These $60 million in Marina costs were allocated into every home that was sold.  At the time the $60 million was spent on Marina construction, from 2008 to 2010, Haseko intended to complete the Marina."  Unchallenged findings of fact are binding on appeal.  Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 458, 40 P.3d 73, 81 (2002).

their homes by approximately $20,000 per home, *i.e.*, that the value of what they received at the time of purchase was $20,000 less than the purchase price. Plaintiffs were not required to prove their UDAP damages with scientific precision; reasonable certainty was sufficient. See Lima, 149 Hawai'i at 467, 494 P.3d at 1200. Although the jury was free to reject all or any part of the evidence Plaintiffs presented on their damages – and it appears the jury rejected much of it – the evidence was sufficient to support a UDAP damages award based on a benefit-of-the-bargain measure. The Legal Trial Court erred in concluding otherwise.

In setting aside the jury's damages award, the Legal Trial Court also appears to have imposed an incorrect legal standard on Plaintiffs. Specifically, the court ruled that Plaintiffs had failed to show "the difference between the value of the property as represented with a marina, minus the value of the property that was actually received with lagoon." (Emphasis added.) The proper measure of benefit-of-the-bargain damages, however, was the difference between the value of Plaintiffs' homes as represented with a marina, and the value of what they received at the time of the purchase (which, again, was essentially the promise of a house without a marina). See Ellis, 51 Haw. at 53, 451 P.2d at 820.

Accordingly, the Legal Trial Court erred in setting aside the jury verdict and entering judgment in favor of the Haseko Defendants on Plaintiffs' UDAP claim.

**3.    Rescission**

In their third point of error, Plaintiffs contend that the Legal Trial Court erred in denying relief to Plaintiffs pursuant to HRS § 480-12, and "simply should have voided the sales contracts following HRS [§] 480-12's plain mandate that contracts entered into on the basis of UDAP violations are simply void."

The plain language of HRS § 480-12 states that "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity."  On this basis, "a transaction that includes an unfair or deceptive business practice is typically null and subject to rescission."  Sakal v. Ass'n of Apartment Owners of Hawaiian Monarch, 148 Hawaiʻi 1, 8 n.11, 466 P.3d 399, 406 n.11 (2020).

Here, the record reflects that the Plaintiffs contracted with only one of the nine Haseko entities - Hoakalei Residential, LLC – when they purchased homes.  Neither the Legal Trial Court jury, nor the Equitable Trial Court, found that Hoakalei Residential, LLC was liable for violating HRS § 480-12.  Notably, the Legal Trial Court jury further found, in its

18

special verdict, that none of the nine Haseko entities acted as the alter ego of any other Haseko entity.  Plaintiffs have not advanced any cognizable legal theory permitting the rescission of sales contracts that were entered into with a party that was not found liable for a UDAP violation.

The Legal Trial Court did not err in concluding that Plaintiffs are not entitled to elect the rescission of their home sales contracts pursuant to HRS § 480-12.

### 4.    Evidence of Subsequent Increases in Property Values

Plaintiffs contend that the Legal Trial Court erred in allowing evidence, including Hallstrom's testimony, regarding "a subsequent increase in property values[,]" *i.e.*, subsequent to the home sales at issue.  Plaintiffs argue that Hallstrom's testimony conflicts with Hawaiʻi law that fraud damages are measured "at the time of the misrepresentation."[11]  (Emphasis omitted.)

Initially, we note that Plaintiffs do not quote the specific evidence and testimony that they challenge or otherwise identify where it is in the voluminous record.  See HRAP Rule 28(b)(4).  In any event, Plaintiffs' broad-brush argument

---

[11]    More precisely, in fraud or deceit cases, damages are measured at the time of the transaction.  See Ellis, 51 Haw. at 53, 451 P.2d at 820.

19

challenging Hallstrom's testimony fails to show his testimony was inadmissible.

Hallstrom essentially testified, based on the studies he conducted, that property values in the Haseko development did not drop when Haseko announced in late 2011 that a lagoon rather than a marina would be built. Although this testimony did not relate directly to the <u>measure</u> of Plaintiffs' damages at the time of their home purchases,[12] it was at least relevant to whether Plaintiffs were injured as a result of Haseko's alleged misrepresentations that a marina would be built, or alleged failure to disclose that it would not be built. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Hawaii Rules of Evidence Rule 401. Evidence that home prices did not drop in the Haseko development when Haseko announced that a lagoon rather than a marina would be built, tended to show – or at least Haseko was free to argue that such evidence tended to show – that the announced switch had no effect on the market prices of those homes. Such

---

[12] Indeed, Plaintiffs argued to the jury in closing that Hallstrom's testimony was "100 percent worthless, [because] you have a jury instruction that says you measure the damages at the time of the sale."

evidence would, in turn, demonstrate that the prices of those homes were not artificially inflated by the false promises of a marina, and that Plaintiffs therefore suffered no loss as a result of the false promises. Indeed, if prices had dropped (or had not kept pace with increasing values of comparable properties) after the announcement, Plaintiffs would have been able to present such evidence in support of their argument that the false promises caused their loss.[13] Because Hallstrom's testimony was relevant to an issue "of consequence to the determination of the action," *i.e.*, whether Plaintiffs were injured as a result of the alleged UDAP violation, the Legal Trial Court did not err in admitting the evidence.

5.    **Summary**

For the reasons discussed above, the Legal Trial Court did not err in instructing the jury on the measure of damages for a UDAP violation, in not ordering rescission of Plaintiffs' sales contracts based on HRS § 480-12, and in allowing

---

[13]    In a somewhat related context, class action plaintiffs in securities fraud cases frequently point to the price drop of a stock after bad corporate news is announced as evidence that the failure to disclose relevant facts months or even years earlier, when the facts first became known, artificially inflated the price of the stock, and that the eventual price drop is evidence of "loss causation," *i.e.*, "that the defendant's deceptive conduct caused [the plaintiff investors'] claimed economic loss." In re Tesla, Inc. Sec. Litig., Case No. 18-cv-04865-EMC, 2022 WL 7374936, at *7 (N.D. Cal. Oct. 13, 2022) (quoting Lloyd v. CVB Fin. Corp., 811 F.3d 1200, 1209 (9th Cir. 2016), and citing numerous other Ninth Circuit "fraud-on-the-market" cases).

Hallstrom's testimony.  The Legal Trial Court *did* err in setting aside the jury verdict, and entering judgment in favor of the Haseko Defendants, on Plaintiffs' UDAP claim.  On remand, the jury's special damages award of $1,300 per home should be reinstated and trebled pursuant to HRS § 480-13(b)(1) and (3), and Plaintiffs should be permitted to seek all additional relief available under these provisions.

**B.  Plaintiffs' Equitable Remedies**

Haseko raises nine points of error on appeal, which fall into two categories.  First, Haseko contends that the Equitable Trial Court erred in allowing Plaintiffs to rescind their sales contracts under the CPA because:  (1) the court's rescission order was based on an erroneous finding that "[t]his lawsuit concerns a marina that was included in the original master plan for a 1,100-acre condominium regime . . . ." ; (2) Plaintiffs were bound by their election to seek damages rather than rescission; and (3) Plaintiffs' rescission claim was time-barred pursuant to HRS § 514B-94(b).  Second, Haseko contends that the Equitable Trial Court erred in awarding $20 million on Plaintiffs' unjust enrichment claim because:  (1) the award was based on the same erroneous finding quoted above; (2) as no Plaintiff can rescind, none can claim an unjust enrichment award; (3) Plaintiffs had an adequate remedy at law; (4) the

22

Hawaiʻi Legislature did not provide an unjust enrichment remedy for a UDAP violation; (5) the evidence did not support the Legal Trial Court's conclusion that any enrichment was unjust; and (6) Haseko's decision to switch to a lagoon caused Haseko to incur a net loss, and thus did not enrich it.

1.  **Rescission Under the CPA**

We conclude that Plaintiffs' claims for rescission under the CPA are time-barred because HRS § 514B-94(b), which governs claims brought under the CPA, is a statute of repose and not a statute of limitations. We thus need not address Haseko's remaining contentions challenging the Equitable Trial Court's rescission order.

"A statute of repose 'bar[s] any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury.'" Zyda v. Four Seasons Hotels and Resorts, 371 F. Supp. 3d 803, 806 (D. Haw. 2019) (quoting Black's Law Dictionary 1546 (9th ed. 2009). HRS § 514B-94(b) states, in pertinent part, that "no action shall be brought for the recovery of the purchase price after two years from the date of the sale[.]" This language definitively specifies the time for bringing a CPA action as calculated "*from the date of the sale*." We find persuasive the

District Court for the District of Hawai'i's analysis in Zyda that the language in HRS § 514B-94(b) is similar, albeit not identical, to the language in HRS §§ 657-5 and 657-7.3, which the Hawai'i appellate courts have recognized as statutes of repose. Id. at 806-10.

Here, Plaintiffs filed their complaint on July 17, 2013, which was more than two years after all of the named class action Plaintiffs who owned condominiums within the Project purchased their units. Plaintiffs' claim for rescission under the CPA is time-barred pursuant to HRS § 514B-94(b).

### 2. Unjust Enrichment

#### a. Finding of Fact 2

Haseko contends that FOF 2 erroneously states: "This lawsuit concerns a marina that was included in the master plan for a 1,100-acre condominium regime . . . ." Haseko asserts that "[t]he project is not a condominium property regime[,]" but does not present any discernible argument explaining how FOF 2 affects, let alone undermines, the Equitable Trial Court's unjust enrichment award. This point is therefore deemed waived. See HRAP Rule 28(b)(7).

#### b. No Rescission, No Unjust Enrichment

Haseko contends that "because no homeowner may now rescind, no homeowner may claim the unjust enrichment award."

24

This argument depends on Haseko's cramped and inaccurate reading of the Equitable Trial Court Order. The relevant portion states: "[F]or any Class member who does not elect [rescission and] restitution of the full purchase price plus interest as set forth above, i.e. Class members who wish to continue living within the Ocean Pointe/Hoakalei, they are awarded the remedy of unjust enrichment in the amount of their pro rata share of $20,000,000." Thus, if a class member cannot elect rescission because it is not legally available in these circumstances, nothing in the Order prevents that class member or any other class member who wishes to continue living within Ocean Pointe/Hoakalei, from sharing in the Equitable Trial Court's unjust enrichment award. Haseko's argument is without merit.

### c. Adequacy of Legal Remedy

Haseko contends that Plaintiffs were not entitled to the equitable remedy of restitution on their unjust enrichment claim because they had adequate legal remedies for their breach of contract and UDAP claims.

"As to the question of when an equitable remedy may be invoked, this court observes the principle, long-invoked in the federal courts, that equity has always acted only when legal

remedies were inadequate." Porter v. Hu, 116 Hawaiʻi 42, 55, 169 P.3d 994, 1007 (App. 2007) (cleaned up).

Here, Plaintiffs did not contract with any of the four Haseko Defendants found liable for a UDAP violation. The only contracts Plaintiffs had were with Hoakalei Residential, LLC. Plaintiffs thus had no breach of contract remedy, or contract-based UDAP remedy, against the Haseko Defendants.[14] The Equitable Trial Court did not err or otherwise abuse its discretion in determining that "[n]o contracts exist between the Haseko Defendants and Plaintiffs to bar relief through unjust enrichment[,]" and that Plaintiffs' breach of contract remedies were inadequate as to the Haseko Defendants. See id. at 56, 169 P.3d at 1008 ("the circuit court . . . imposed an equitable remedy upon determining that the contract remedies available did not adequately address Defendants' unjust enrichment (a matter within the circuit court's discretion)").

Plaintiffs also lacked an adequate tort remedy. In Porter, this court ruled:

> Although the jury returned a verdict in [Plaintiffs'] favor and awarded tort damages, Plaintiffs contend the jury's award was insufficient to adequately compensate their losses as a result of Defendants' wrongful conduct. This court agrees with Plaintiffs and concludes that the mere

---

14    Relatedly, because Plaintiffs did not contract with any of the Haseko Defendants, none of those defendants are shielded by the rule that when an express contract exists between the parties concerning the same subject matter, equitable remedies are not available. Porter, 116 Hawaiʻi at 54, 169 P.3d at 1006.

> availability of some figure of tort damages does not by itself preclude an award founded on unjust enrichment. As Palmer notes in his treatise on restitution, "[t]he objectives of the two remedies are different, however: in the damage action the plaintiff seeks to recover for the harm done to him, whereas in the restitution action he seeks to recover the gain acquired by the defendant through the wrongful act." 1 George E. Palmer, *The Law of Restitution* § 2.1, at 51 (1978). Although the tort and unjust enrichment claims are, in a sense, founded on the same wrongful conduct—the deprivation of Plaintiffs' books of business by Defendants—the remedies sought are sufficiently distinct, in this court's view, to exclude this case from the realm of "double recovery" situations.
>
> We conclude, in light of the foregoing, the circuit court did not abuse its discretion in ruling that no adequate remedy at law existed and the equitable remedy of unjust enrichment was therefore appropriate.

Id. (emphases added).

Similarly, here, the jury returned a verdict in Plaintiffs' favor and awarded tort-based UDAP damages, but Plaintiffs contend that the jury's award did not provide an adequate remedy. Based on the Equitable Trial Court's unchallenged FOFs, we agree that the jury's verdict was insufficient to adequately compensate Plaintiffs for their losses – and the Haseko Defendants' unjust gains – as a result of the Defendants' wrongful conduct. The Equitable Trial Court determined that Plaintiffs "have shown the absence of an adequate remedy at law[,]" based on the Legal Trial Court's decision to set aside the jury's award of damages for "deceptive UDAP conduct." However, the court also noted that the jury's factual findings of wrongdoing by the Haseko Defendants were not

27

set aside, and recounted the details of that wrongdoing in the court's own FOFs, none of which (except for FOFs 2 and 55) the Haseko Defendants contest on appeal. The uncontested FOFs support the conclusion that the jury's award of $1,300 per home did not provide an adequate remedy, where Plaintiffs established that the Haseko Defendants were unjustly enriched by their wrongful conduct. As in Porter, "[a]lthough the [UDAP] and unjust enrichment claims are, in a sense, founded on the same wrongful conduct[,] . . . the remedies sought are sufficiently distinct . . . to exclude this case from the realm of 'double recovery' situations." Id.; see also id. at 58-59, 169 P.3d at 1010-11 ("the damages alleged to have resulted from the tort are different in type and character from those arising under the equitable principle of unjust enrichment."). Accordingly, Plaintiffs established that they lacked an adequate remedy at law, and the equitable remedy of unjust enrichment was therefore appropriate.

**d. Equitable Remedies Not Provided by the Legislature**

Haseko contends that the legislature has provided several remedies under the UDAP statute, but did not choose to allow monetary damages based on unjust enrichment. Haseko argues that the Equitable Trial Court therefore "had no

authority to add equitable remedies not allowed by the Legislature."

Contrary to Haseko's contention, nothing in the statutory language or history of HRS §§ 480-2 and -13 expresses a legislative intent to make statutory remedies exclusive or to otherwise preclude an unjust enrichment claim and related remedy in appropriate circumstances. <u>Cf.</u> <u>E. Star Inc., S.A. v. Union Bldg. Materials Corp.</u>, 6 Haw. App. 125, 142, 712 P.2d 1148, 1159 (1985) (HRS §§ 480-2 and -13(a)(1) "do not supersede common law fraud claims based on deception in the course of trade and commerce").

### e. Evidence of Unjust Enrichment

Haseko contends in its last two points of error that the switch from marina to lagoon did not enrich Haseko, the amount of the $20 million unjust enrichment award was clearly erroneous, and any enrichment to Haseko was not unjust.

We note once again that the Haseko Defendants do not contest, except for FOFs 2 and 55, the numerous, detailed FOFs underlying the Equitable Trial Court's decision to award $20 million in restitution on Plaintiffs' unjust enrichment claim. Moreover, upon review, the record contains substantial evidence supporting FOF 55 and the Equitable Trial Court's mixed conclusion of fact and law that the Haseko Defendants were

unjustly enriched in the amount of $20 million.  This finding and conclusion is not clearly erroneous, and in the circumstances of this case, the Equitable Trial Court did not abuse its discretion in awarding that amount in restitution to Plaintiffs.

## IV.  Conclusion

For the reasons discussed above, we vacate the Judgment, and we affirm in part and vacate in part the Legal Trial Court Order, Equitable Trial Court Order, and Order Denying New Legal Trial.  We remand for further proceedings consistent with this memorandum opinion.

DATED:  Honolulu, Hawai'i, September 16, 2024.

On the briefs:

Steven K.S. Chung,
for Defendants-Appellants/
Cross-Appellees.

Terrance M. Revere,
P. Kyle Smith,
for Plaintiffs-Appellees/
Cross-Appellants.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge